**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CR-20114-DSL**

**UNITED STATES OF AMERICA**

**v.**

**MARTIN ESHO,**

**Defendant.**
_______________________________/

**UNITED STATES OF AMERICA'S RESPONSE TO**
**DEFENDANT'S MOTION IN LIMINE**

The Defendant, Martin Esho, asks this Court to preclude reference to broad groups of depictions based on the preliminary "tag" law enforcement created to organize its review of the devices. The Defense, who did not conduct an evidence view prior to filing the Motion, fundamentally misunderstands the tags and speculates as to the content of the depictions. But even, if they were correct, the Motion should still be denied because the evidence is admissible as outlined in the United States Motion in Limine and Notice of Intent to Introduce Evidence Pursuant to Rule 414 and 404(b). (DE 37). Evidence related to the Defendant's vast collection of sexually explicit content involving minors bears directly on his knowing transportation and possession of sexually explicit depictions.

The United States incorporates by reference its Motion in Limine and Notice for the admission of the evidence that the Defendant seeks to exclude. (DE 37). The arguments made therein will not be reiterated here, but the United States does have several points of clarification and/or responses to the Defendant's Motion.

*First*, the Defendant refers to a forensic extraction report, provided in discovery, that lists more than 5,000 files that law enforcement identified as being relevant to the investigation. Forensic review software allows the user to create tags to organize and facilitate future review of data. The tag is not a final conclusion about the content of a depiction. Often more than one tag is applied to the data. The Defendant incorrectly assumes that a tag of "ai" or a tag of "age difficult" means that the depiction does not include a real minor child. For example, there are depictions that law enforcement labeled as "ai" for organizational purposes that are known child sexual abuse material but the depiction was slightly altered in some way. For example, the Defendant has a known child sexual abuse material video depicting an adult male penetrating a minor child's mouth with his penis. The Defendant also has a version of the video where the child's mouth is digitally distorted. The distorted video still depicts the real sexual assault of a real child. The Defendant's objection based on their speculation about what the evidence depicts should be summarily denied.

*Second*, the Defendant possessed known series of child sexual abuse material with identified minors. As of this filing, the National Center for Missing and Exploited Children confirmed that more than 1,400 depictions in the Defendant's collection come from known series of child sexual abuse material. The United States is prepared to show all files identified by the National Center for Missing and Exploited Children to the Defendant at an evidence view and such files have been available for the defense to review since the onset of the case.

*Third*, there is no basis to exclude duplicates, thumbnails or cached images. Here, the Defendant intentionally duplicated files in his possession. For example, the Defendant created screen recordings that captured what was displayed on his phone screen, including when he was watching child sexual abuse material. The Defendant then maintained the original depiction and the screen recording on his phone. Or he saved the same file to different locations on the device.

Any depiction, even a duplicate, violates the law. But the fact of duplication—which the Defendant created himself—is direct evidence of the Defendant's knowledge and intent. It also shows that these depictions were not on his devices by mistake. Similarly, the cached and thumbnail depictions are forensic evidence of the Defendant's pattern of activity on his devices. They are evidence of how the Defendant interacted with the sexually explicit material in his collection.

*Fourth*, the Defendant's affirmative acts to obtain and share child sexual abuse material are direct evidence of the Defendant's knowledge and intent. *How* and *where* the Defendant obtained child sexual abuse material and *what* he did with it is integral to the story of the offense and thus inextricably intertwined. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

*Fifth*, the United States is unclear what depiction the Defendant referring to as the "bathroom recording." (DE 38 at 10). At this time the United States does not anticipate admitting a voyeurism video of an adult female in the bathroom during our case in chief.

*Sixth*, the United States trial exhibits will not use the examiners tag names. The forensic reports admitted into evidence will be tagged by exhibit number, location or other neutral description. However, there is no basis to preclude the United States or its witnesses utilizing the term "child sexual abuse material," "CSAM," "child pornography," or "victim." All are an accurate description to refer to the type of investigation that was conducted by law enforcement, the type of case the jury will be hearing, and the type of evidence they will be reviewing. And it is an accurate description of content and the children depicted. The United States anticipates that the vast majority of it's trial exhibits will be made up of the known child sexual abuse material all of which have child victims identified by the National Center for Missing and Exploited Children. The Court will instruct the jury on the specific elements that must be proven and instruct the jury

that they are permitted to make their own conclusions about each witnesses testimony and that what the attorneys say is not evidence. The Court's instructions mitigate any risk of prejudice.

*Seventh*, the United States does not intend to offer evidence of the Defendant's prior travel to Colombia or the reason he was referred to secondary inspection. The United States does intend to offer evidence that the Defendant was selected for inspection upon arrival on an international flight from Colombia. The United States does intend to offer that the unit each law enforcement officer was assigned to at the time of this investigation. The training and experience of a law enforcement witness is relevant information for the jury to consider when evaluating the credibility of their testimony.

*Finally*, the United States does not intend to offer lay opinions about whether a person is a minor or whether a particular depiction was AI generated. The Defendant's request that any future expert disclosure be treated as untimely is procedurally improper. The Defendant has not made an expert demand pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the Motion.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: *s/Brianna Coakley*
Brianna Coakley
Assistant United States Attorney
Court ID No. A5503184
United States Attorney's Office
99 NE 4th Street, 6th Floor
Miami, Florida 33132
(305) 961-9127
Brianna.Coakley@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 15, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which provides electronic notice of the filing.

*s/Brianna Coakley*
Brianna Coakley